J-S58021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARYL LAMAR SHUPP, JR., | |
| Appellant | No. 588 MDA 2015 |

Appeal from the Order of March 3, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000506-2011, CP-36-CR-0000616-2012, CP-36-CR-0000740-2012

BEFORE: GANTMAN, P.J., OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 07, 2015**

Appellant, Daryl Lamar Shupp, Jr., appeals from an order entered on March 3, 2015 in the Criminal Division of the Court of Common Pleas of Lancaster County that denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court thoroughly summarized the facts and procedural history in this case as follows:

> [Appellant was charged at docket number 506-2011 with fourteen counts of theft by deception (graded as third-degree felonies), seven counts of theft by deception (graded as first-degree misdemeanors), and one count of theft by deception (graded as a third-degree misdemeanor). The charges at 506-2011 are referred to as the "Credit Bureau charges" and arose out of Appellant's thefts from his former employer, the Credit Bureau of Lancaster County, from January 1, 2005 through October 1, 2009. At docket number 616-2012, Appellant was charged with two counts of theft by deception (graded as second-degree misdemeanors). At docket number

---

\* Retired Senior Judge assigned to the Superior Court

740-2012, Appellant was charged with four counts of theft by deception (graded as first-degree misdemeanors) and three counts of theft by deception (graded as second-degree misdemeanors). The charges at docket numbers 616-2012 and 740-2012 are referred to as the "Laser Lab charges" and arose out of Appellant's thefts from his next employer, Laser Lab, from February 1, 2011 to June 1, 2011. Appellant committed some of the offenses included as the Laser Lab charges after the Commonwealth filed information 506-2011 but before the preliminary hearing in that case.]

[Appellant] entered an open guilty plea to all the charges on September 24, 2012. A pre-sentence investigation was ordered [and,] on December 7, 2012, [Appellant] was sentenced by the [trial c]ourt to an aggregate sentence of four to [12] years in a state correctional institution, followed by seven years consecutive probation. After [sentencing], [Appellant] filed a [n]otice of [a]ppeal to th[is Court and we] affirmed [Appellant's judgment of sentence] on November 6, 2013. [Appellant thereafter] filed a *pro se* PCRA petition on December 6, 2013 and was appointed counsel. A counseled petition was filed on August 15, 2014, alleging trial counsel was ineffective for failing to clarify whether [Appellant's] plea was open or negotiated and [for] failing to file a post-sentence motion challenging the validity of the guilty plea.

An evidentiary hearing was held on October 30, 2014. At the hearing, [Appellant] presented three witnesses: Attorney Steven Breit, who originally represented [Appellant] at the preliminary hearing for [the Credit Bureau] charges at docket 506-2011; Attorney Richard B. MacDonald, who represented [Appellant] through sentencing on all three dockets following Attorney Breit's withdrawal from the case; [and, Appellant]. The Commonwealth presented testimony from [Assistant District Attorney ("ADA") Charles H. Rieck, IV]. [Appellant] and the Commonwealth stipulated to the testimony of Attorney Melissa R. Montgomery, who represented Petitioner at his preliminary hearing on [the Laser Lab charges at] docket numbers 616-2012 and 740-2012.

Attorney Breit testified that he represented [Appellant] at the preliminary hearing on February 3, 2011 for the [Credit Bureau] charges on docket 506-2011. Attorney Breit testified that prior to the hearing, he had discussions with ADA Rieck, the ADA

- 2 -

assigned to the case, in which Attorney Breit had worked out a potential plea agreement which called for concurrent sentences on the Credit Bureau charges, resulting in a county sentence. Attorney Breit also testified that he had written a memo[random] to himself memorializing the conversation, dated January 21, 2011[.] [T]he memo[random] indicated that ADA Rieck would agree to a county sentence if the preliminary hearing was waived as a sign of acceptance of responsibility. Attorney Breit testified that he informed [Appellant] of the exchange and, as a result, [Appellant] waived his preliminary hearing on February 3, 2011. ADA Rieck was not the attorney present at the preliminary hearing and there was no memorialized communication from ADA Rieck confirming this offer [at] docket 506-2011. Attorney Breit testified that [Appellant's] bail on 506-2011 was revoked when he was charged [at] dockets 616-2012 and 740-2012. Attorney Breit entered his appearance on those charges on April 1, 2011, but by January 16, 2012, the relationship between Attorney Breit and [Appellant] had been strained to such a degree that the [trial c]ourt granted Attorney Breit leave to withdraw his appearance as defense counsel.

The stipulated testimony of Attorney Montgomery stated that she appear[ed] as [Appellant's] counsel at his preliminary hearing on [the Laser Lab charges at dockets 616-2012 and 740-2012 on] February 3, 2012, which [Appellant] waived. The stipulation also stated that Attorney Montgomery never had any conversation with Attorney Breit about [Appellant's] criminal charges.

Attorney MacDonald testified that he entered his appearance on all three docket numbers on May 4, 2012. Attorney MacDonald testified that he could not recall having any discussion with Attorney Breit about [Appellant's] criminal charges. He testified that he met with [Appellant] approximately once a month and [Appellant] referenced an agreement [Appellant] believed existed between Attorney Breit and ADA Rieck from the first preliminary hearing. Attorney MacDonald testified that there was no agreement between Attorney Breit and ADA Rieck. He testified that had there been an agreement, it would no longer be valid because of [Appellant's] continuing criminal conduct and because ADA Rieck was making it very clear that there were no agreements. Attorney MacDonald testified that he knew

[Appellant] waived his preliminary hearing on docket 506-2011, but that the waiver was not in return for anything specific.

Attorney MacDonald testified that at the time of the guilty plea, it was clearly an open plea. He testified that ADA Rieck had indicated a large payment of restitution might be helpful in the view of the [trial c]ourt, but ADA Rieck would not be offering anything in return for it. Attorney MacDonald testified that at the time of the guilty plea, he indicated to the [trial c]ourt that [Appellant] believed ADA Rieck had offered concurrent time on the Laser Lab charges, concurrent with each other and the Credit Bureau charges[.] [H]e specifically testified that he was "trying to make something from nothing" and "inviting the Judge to consider what [Attorney MacDonald] had been told [ADA] Rieck was saying to other [defense] attorneys without it being an agreement…even though it wasn't in writing." Attorney MacDonald testified that none of the ADAs present for the guilty plea or sentencing rejected his statement regarding concurrency of the Credit Bureau charges and Laser Lab charges. Attorney MacDonald testified that neither an agreement nor a recommendation had been offered to him, so he proceeded as though [Appellant was entering] an open guilty plea. [Attorney MacDonald] testified that he did not believe there was any agreement in this case, and, if there had been an agreement, "it was negated by continuing criminal conduct, which in [Attorney MacDonald's] opinion is not accepting responsibility for your current criminal conduct in any reference. He testified that he discussed with [Appellant] the differences between [an] open plea, [a] negotiated plea, and a partially negotiated plea and that [Appellant] "understood that it was an open plea, there were no deals, [and] it would be up to Judge Knisely to determine the sentence." Attorney MacDonald testified that he believed [Appellant's] guilty plea was knowing, voluntary and intelligent.

Attorney MacDonald testified that he indicated to [Appellant] that [he] was likely looking at a sentence of four to eight years. [Attorney MacDonald] testified that he told [Appellant] that he should not be surprised by a harsh sentence based on the victim impact statements, which Attorney MacDonald described as "two of the best victim impact statements I ever read and/or heard in the courtroom." [Attorney MacDonald] testified that after the sentencing, he met with [Appellant] in the holding cell and [Appellant] made no objection to the sentence, felt it was

- 4 -

reasonable, and had no intention of filing any motions disputing the sentence. Attorney MacDonald testified that [Appellant] did not contact him while [Appellant] was in Lancaster County Prison and that he only learned [Appellant] wanted to appeal from the Public Defender's office, at which time Attorney MacDonald filed a motion to modify sentence on behalf of [Appellant].

[Appellant] testified that Attorney Breit indicated that if the preliminary hearing for the Credit Bureau charges at docket 506-2011 was waived, then the ADA would agree to a county sentence. [Appellant] testified that he went over sentencing guidelines with Attorney Breit during every visit. [Appellant] testified that after the preliminary hearing, during his meetings with Attorney Breit, Attorney Breit never indicated whether the "deal" was still on with the Commonwealth. [Appellant] testified that when he appeared for his second preliminary hearing on the Laser Lab charges at docket[s] 616-2012 and 740-2012 with Attorney Montgomery, he was told that he should waive the hearing because the Commonwealth would run the charges along with the Credit Bureau charges at docket 506-2011. [Appellant] testified that he never retained Attorney Montgomery at the Common Pleas level. [Appellant] testified that he told Attorney MacDonald about the offer made by ADA Rieck for concurrent sentences. He testified that he signed the guilty plea paperwork indicating there was no negotiated guilty plea because he just signed where his attorney told him to sign. On cross-examination, [Appellant] testified that he committed new crimes after he [was charged for the Credit Bureau offenses], but prior to his preliminary hearing [in that case]. He testified that at his guilty plea he never stopped the plea and told anyone that this was not the plea he had agreed to enter. He testified that at the guilty plea he told the Court it was his decision to plead guilty, that he had not been forced, threatened, or coerced to plead guilty, and that the Court explained to him that the sentence would be solely up to the Court to decide. Finally, [Appellant] testified that he did not recall telling Attorney MacDonald that he wanted to file any motions after the sentencing.

The Commonwealth called former ADA [] Rieck as their sole witness. [ADA] Rieck testified that he was the ADA in charge of [Appellant's] criminal case. He testified that he never provided a formal offer to Attorney Breit regarding [Appellant's] case. He testified that he would not have made a specific plea offer

- 5 -

because [pleas involving theft from an employer required approval from either the District Attorney or the First Assistant District Attorney when the case exceeded a certain dollar amount and Appellant's charges far exceeded that threshold]. ADA Rieck testified that he had discussed with Attorney Breit how [Appellant] might show remorse to mitigate a sentence, but no specific deal was reached. He also testified that any leniency he was inclined to show would have disappeared upon learning of [Appellant's] subsequent crimes and that he believed he communicated that position to Attorney Breit. He also testified that if there had been any formal offer or formal deal, he would have conveyed the deal in writing along with discovery to Attorney MacDonald when Attorney MacDonald entered his appearance.

Trial Court Opinion, 3/4/15, at 1-6. After the PCRA hearing and the submission of briefs by the parties, the court denied collateral relief by order dated March 3, 2015. This appeal followed.[1]

On appeal, Appellant raises the following question for our consideration:

WAS NOT [APPELLANT] ENTITLED TO RELIEF UNDER THE POST CONVICTION RELIEF ACT BECAUSE THE KNOWINGNESS AND VOLUNTARINESS OF [APPELLANT'S] GUILTY PLEA WAS VITIATED BY THE INEFFECTIVENESS OF GUILTY PLEA COUNSEL AND BECAUSE GUILTY PLEA COUNSEL WAS INEFFECTIVE IN FAILING TO FILE A POST SENTENCE MOTION IN THE NATURE OF A MOTION CHALLENGING THE VALIDITY OF THE GUILTY PLEA?

Appellant's Brief at 4.

Appellant challenges an order that denied collateral relief under the PCRA. "Under the applicable standard of review, we must determine whether the ruling of the PCRA court is supported by the record and is free

_____

[1] The requirements of Pa.R.A.P. 1925 have been satisfied.

of legal error." ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011) (citation omitted). In conducting this inquiry, "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this Court[; h]owever, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." ***Id.*** (citations omitted).

Appellant contends that guilty plea counsel's ineffectiveness caused him to enter an invalid plea. Specifically, Appellant summarizes his claim as follows:

> Guilty plea counsel [(Attorney MacDonald)] should have been aware the [Appellant] prior to entering his guilty plea was harboring the subjective belief that the Commonwealth would fulfill the promises that it made in return for his waiving the preliminary hearings on both [the Credit Bureau and Laser Lab] charges. Counsel was ineffective in failing to engage in either one of the following two courses of action: (a) ensure that [the various assistant district attorneys] attending the court proceedings were aware of the promises made by lead ADA Reick regarding recommendations that the Commonwealth would make at sentencing; or (b) ascertain that any such promise was rescinded, and inform [Appellant] of that fact.
>
> Counsel's ineffectiveness rendered [Appellant's] guilty plea unknowing and involuntary. Counsel was also ineffective in failing to file a motion challenging the validity of the guilty plea by raising the claim that [Appellant's] guilty plea was induced by his belief that the Commonwealth at sentencing promised to recommend concurrent sentences on the Credit Bureau charges.

Appellant's Brief at 28. Appellant concludes that this Court should reverse the order denying collateral relief and further vacate his guilty plea and sentence. ***Id.*** at 39.

To prevail on a petition for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2). *Spotz*, *supra*. These circumstances include the ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Our analysis of an ineffectiveness claim begins with the presumption that counsel is effective. *Spotz*, *supra*. To overcome this presumption and prevail on such a claim, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction. Moreover,

> claims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness caused an involuntary or unknowing plea. This is similar to the 'manifest injustice' standard applicable to all post-sentence attempts to withdraw a guilty plea. The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made.
>
> Once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the

- 8 -

voluntariness of the plea is established. A defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled.

Determining whether a defendant understood the connotations of his plea and its consequences requires an examination of the totality of the circumstances surrounding the plea.

[I]n order to determine the voluntariness of the plea and whether the defendant acted knowingly and intelligently, the trial court must, at a minimum, inquire into the following six areas:

(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he has a right to trial by jury?

(4) Does the defendant understand that he is presumed innocent until he is found guilty?

(5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001) (internal citations omitted).

We have carefully reviewed the certified record, the parties' appellate submissions, and the PCRA court's opinion. In its opinion, the court reviewed the transcript of Appellant's plea hearing and concluded that, based upon the totality of circumstances, Appellant entered a knowing,

voluntary, and intelligent plea. Trial Court Opinion, 3/4/15, at 9. In addition, upon review of the PCRA hearing transcript, the court credited the testimony of plea counsel and ADA Reick and rejected Appellant's testimony. Taken together, the testimony offered by plea counsel and ADA Reick credibly established that there was no plea agreement offered in this case and that Appellant was fully aware that he tendered an open plea to the charges against him. The PCRA court found Appellant's testimony to be "patently unreasonable" in view of his assertion that he believed he still had an agreement for a county sentence despite his continuing course of criminal conduct and the revocation of his bail on the Credit Bureau charges. *See id*. Since Appellant acknowledged at sentencing that he was entering an open guilty plea under which the court was free to fashion his sentence, the PCRA court held that Appellant was bound by this acknowledgement and that he could not offer a contrary, subjective understanding as the basis for collateral relief. We hold that the PCRA court's findings are fully supported by the record and that its legal conclusions are free of error. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2015